Good morning. Steve Ruscetto for the Plaintiff Robert Boggs. I would like to reserve five minutes for rebuttal. May it please the Court, there are three issues in the case. Qualified immunity, municipal liability, and a state law issue. The Court sent out a question about an earlier ruling in a related case and whether it affects the Section 1983 claims in the case. And I want to address that first. The question raised by the Court is whether issue preclusion should apply to any of the 1983 claims. There's two 1983 claims on appeal. The first is qualified immunity. The Court is correct. The issue preclusion can apply from an unpublished opinion. It does not apply in this circumstance. On the qualified immunity issue, the defendant in this case, from a factual standpoint, is in a distinctly different position than the defendants in the Boggs v. Hoover case. And the distinctly different position from a factual standpoint is this. Number one, the individual in this case, Mr. Schrunk, was the decision-maker with respect to employment. Thus, the decision-maker knew of the status of Blank's employment throughout the time period at issue. Let me stop you for a second. Yes. And I'm having some trouble with Boggs 1 and Boggs 2, but let's call it the previous decision. All right. With respect to the previous decision, I thought what the panel said, although it was split, was that the law was not so clear at the time, and therefore qualified immunity should apply. Why does it make a difference who the defendant is if the law was not clear? Because what the Court said specifically was the law was unclear in the circumstances of this case. And the specific circumstances are controlled by one line in the memorandum of opinion, and that one line is this. Given the uncertainty as to the status of his withdrawn resignation, the prospect of disciplinary action lingered. The individual defendants in Boggs in the previous decision were all individuals for whom the right-to-do process arose while the resignation was withdrawn. Mr. Shrunk, in this case, was the decision-maker. He was involved from January 5th throughout the entire time period. From January 5th until February 4th, there was no withdrawn resignation. Now, if I understand the Steen case that this Court identified, if it is collateral if there's any doubt as to whether an issue was actually litigated in a prior proceeding, there is no reference in the prior decision of this Court to that period, January 5th through February 4th. The dissenting opinion said there's two due process issues here. One is the first period of time and the second period of time before and after February 4th. The majority panel did not address that contention. Well, but I guess that's my question. If the dissent said, and it's hard to read dissents as law of the case, but the dissent said you've effectively covered all these periods, and that's a mistake, and the majority didn't respond, why don't we read the majority opinion as covering all those periods? Because of this Court's decision in Steen, which said, if the decision could have been rationally grounded upon an issue other than that which defendant seeks to foreclose from consideration, you have to not apply issue preclusion. There is a rational basis for the majority to have not addressed that, and that is just very simply all those individual defendants were involved throughout the time when the status of the resignation was withdrawn. Mr. Trump was the only one from the evidence in the record that needed to provide due process during that period, January 5th through February 4th. Thus, under this Court's decision, there is a basis for distinguishing two, the two cases, this case and the prior case. The second thing I would note is that one of the things focused on in Steen is the confusion in the earlier decision. Now, with all due respect, and I know that this issue has been ‑‑ I brought this to the attention of the majority panel, and I filed a petition for rehearing, but I would suggest that the prior decision is somewhat contradictory on its face, and that is ‑‑ Are you suggesting that Ninth Circuit opinions can be contradictory on their face? I'm trying to do it as respectfully as I can. And that is a single line that I'm going to pull out from the memorandum decision. It says, It was not until May 10th, 2007, when Boggs filed a civil suit related to his resignation, that the resignation became final and his employment record definitively classified as a public record. Well, if his resignation became final on May 10th, and that triggered a determination that it was a public record, how can there be any gap between the date of the employment action and the date of publication? Let's say for a moment that you're right. You've still got the problem of Kulongowski. I know about that one. Yes. And there we were talking about 19 days. You're talking about a period of months. You don't have a period of time that is, if you will, a safe, clear period where you're still entitled to relief, do you, under our case law? Very clearly. And why is that? January 5th through February 4th, under Cox v. Roskelley, the employment decision had been made, was made on January 5th. The document became a public record on January 5th. Mm-hmm. There is – Tibbets isn't – versus Kulongowski isn't a problem. And that's very clear, both in the law and the facts. Okay. Your position is the Ninth Circuit was wrong. You asked for a rehearing of the hearing in Bonk. That was denied. You say that that has no impact on this case, right? No. That's not my position. Okay. My position is not that the Ninth Circuit was wrong. My position is that the individual defendants in the prior proceeding are differently situated because of the facts. I hear you, but that's not what your PFREV said. You said – these folks have said that the last day that he was employed was when he filed his civil suit. You said that's wrong. That's just wrong. Let's re-hear this. And we didn't. I said it's confusing and that's a factor that's taken into account in applying issue preclusion under Steen. That's all I've said. But isn't that confusion precisely why BOGS II came out the way it did? With BOGS II, as I read it, it says we really can't tell under Oregon law what day publication, in effect, occurred. And because we can't tell that, we don't think any of these defendants lose their qualified immunity. I'm still having some difficulty figuring out if we can't tell what day is the relevant day under Oregon law, why Schrunk is in a different position than the other defendants. And, again, I go back to what I said earlier. The prior memorandum decision is premised on one sentence. Given the uncertainty as to the status of his withdrawn resignation, the prospect of disciplinary action lingered. There was no uncertainty. There was no withdrawn resignation before February 5, 2007. So there could be no uncertainty. Well, that's your perspective. I get that. But, again, we're dealing with the fact that one of our panels made a decision that doesn't agree with you, and you tried to get it changed for the reasons you've articulated. That didn't happen. And as Judge Hurwitz pointed out, you know, there are certain things where you don't get issue preclusion. But on this issue, isn't this on all fours on that limited point? I don't think that that limited point is even addressed in the memorandum opinion. The memorandum opinion does not address the period January 5 through February 4. I understand what you're saying, but that's a different point. The point I'm talking about is that the panel said that his date of resignation became final the day he filed his civil suit. Okay. That's clear, right? That's what they said. Fair enough. Okay. You know, without that, that is an argument. My argument that there is confusion in the memorandum opinion can be characterized as an argument, it's wrong. But that doesn't affect our entitlement to continue this case for the period January 5 through February 4. Okay. Now, just help me here, because I'm reading in the memorandum decision in the next to last paragraph, and it says whether we take January 5 or February 5 as the start date of the temporal nexus, a period far longer than 19 days passed before Bobby's employment record was clearly published. And that's the question Judge Smith just asked you. Why isn't that part of the opinion or memorandum decision dispositive on your claims that begin on January 5? Because I believe that all that's referenced there is assuming that the May 10th, this date when the resignation became final and publication occurred, is the appropriate date to measure the end of the gap, no matter what date you take earlier as the beginning. But Judge Smith asked you, once we get past the 19 days in our prior cases, don't you have a difficulty under our precedence? No, because Cox says publication occurs once the underlying document becomes a public record, and it's clearly established under Cox. You wanted to save five minutes. You want to hold the rest of your time for rebuttal, or do you want to continue? You know, I'm going to try in 60 seconds to address the issue of shrunk as a policymaker, because I think that is an important issue. And basically, from the evidence in the record under the Ulrich case and under the McKinley v. City of Eloy case, there are admitted facts in the record that are sufficient to establish an issue of fact as to shrunk as a policymaker. Where did you preserve that in your pleadings? As I look at these, it seems like you've abandoned that point. I don't agree that we abandoned the point. We pled that the decision was made pursuant to the custom, policy, and practice of the county. In answers to interrogatories, we asserted that shrunk was a policymaker. In response to the motion for summary judgment, we responded with an argument and evidence that shrunk was a policymaker. On reconsideration at oral argument, we raised it again in front of the magistrate. But you didn't amend your complaint, did you? The answer to that is yes, in that raising an issue during discovery before summary judgments are filed is effectively an amendment to the complaint. And that's what we did through. And I don't think that our paragraph in the complaint just needed to be made more specific. This isn't a situation where we pled a different theory. It's a question of more specificity. And we answered that in the interrogatories. But we have evidence that the county delegated authority to this individual to act in the name of the policymaker. Under Ulrich, that's evidence of a delegation of policymaking authority. We have shrunk saying he's the only person who could offer a due process hearing, and there are no policies of the county that constrain his doing so. Under Ulrich, that's dispositive as to whether there is an issue of that on delegation. Thank you, Judge. Okay, break in. We'll hear from the other side. May it please the Court, my name is Panesh Shah, and I'm here on behalf of Defendant Michael Schrunk. I'm here with my co-counsel, Ms. Jenny Madcourt, who represents co-defendants in Albemarle County, and I'd like to leave her with seven and a half minutes of time. Okay. If I can, I hope to do so. Good luck. I'm going to focus my argument on the issue of qualified immunity. This Court should affirm the district court's order granting summary judgment on qualified immunity grounds below, because as this panel has already recognized, I think, this Court's previous decision in the companion case forecloses plaintiff from relitigating the issue of qualified immunity, and in particular the key controlling issue here, which is the date that the employment file became definitively classified as a public record. And there I think the clear holding of the previous Court was that it wasn't until May 10, 2007, that the resignation became final and the employment record became definitively classified as a public record. And the reason they reached that conclusion was independent of the knowledge of any of the individual defendants, but because Oregon law is ambiguous whether the sequence of events here made the file public. And the sequence of events, again, is irrespective of the knowledge of the defendants, is a sequence of events that Judge Roach alluded to earlier, whether it's a January 5th event, a February 4th event. This whole sequence of events is what underlies the case. Does it make any difference? Your opponent says it makes a difference that Shrunk was a policymaker. Well, as a first matter, I think it's sort of curious that, on the one hand, he's arguing he's a policymaker. On the other hand, he's arguing that Mr. Shrunk didn't have the authority to fire. But leaving that inconsistency aside, I don't think that that makes a difference. As a first matter, there's a factual issue that he sort of overlooked, which is that the letter that he submitted, that Mr. Boggs submitted on January 5th, tended to resignation effective February 5th. So during that period from January 5th to February 5th, he was on administrative leave. It's unclear what was going to happen, I think. I don't think until February 5th arrives that there's any final resignation, regardless of what Mr. Shrunk's knowledge is. And, you know, had February 5th come and gone without any other action, arguably the record would have become public at that point. But what happened is Mr. Boggs, on that day prior to the resignation becoming effective, threw a cloud over the whole sequence of events by rescinding his resignation. And then it's very unclear what happened. Well, and I guess my question is, why does it matter for purposes of the name-clearing hearing? Because that's triggered by, when it becomes public, whether Mr. Shrunk was a policymaker or not. I'm not sure that it matters at all. I think the controlling issue is when this file became a public record, and that turns on law and not on an individual's knowledge. Now, it's kind of strange, because you're here representing, in a way, the state of Oregon, and saying we can't figure out what the law is on this. Therefore, it's so unclear that we ought to be given immunity in enforcing it. What is the law on this? Well, so the law is clear, the Oregon Supreme Court. Yeah, I know what the federal law is. What's the Oregon law? Yeah, so the statute, the public record statute, says that writings are public records, but it also says that personnel disciplinary action is exempt from disclosure. And so the Oregon Supreme Court, in the Rice decision, interpreted that to mean a situation in which final punishment is, in fact, needed out. And so the Attorney General has promulgated advice, saying that where there's a resignation in lieu of a disciplinary action, there's no final punishment, and so that the exemption would not apply in that situation. In that same document, the Attorney General has also promulgated advice that so long as disciplinary action is pending, a public body shouldn't disclose information until it's resolved. Insofar as the 19-day period, Tippetts v. Kulangowski was decided several years after the actions in this case, and we found that the law was unclear at that point. Does that have any bearing on whether qualified immunity applies? Absolutely, Your Honor. I think that if it wasn't clear when Tippetts v. Kulangowski was decided that 19 days was a sufficient temporal nexus to satisfy the stigma plus requirements, then the months we're talking about here can be. Even if the date that your opponent cites is the correct one? Even if he cites January 5th? Yes. Correct, Your Honor, because I think he wants to use Cox to say that publication happened the day it was put in the public record. But in Cox, there was no exemption at issue. The parties all conceded that the public record was subject to mandatory public disclosure, which is what's required for publication. And the Court expressly considered the idea of an exemption and said that we don't know of any exemption here that applies. And so that case is very different from this case, where the date that it's put in the public record is not so important as the date that it's no longer subject to an exemption. Well, I take it your opponent's argument is that on January 5th, all the requirements for it to be a public record had been completed. I think that's one way of understanding the argument. I disagree for two reasons. First, because I don't think that it was exempt. Rather, I should say it was exempt that date because the resignation was not final until February 5th, when he was still on administrative leave receiving pay and benefits from January 5th to February 5th. Beyond that, I think Cox introduces some more sort of difficulty here, because there's some language. So you're reading a word in laws that it's at least arguable that it's the effective date of the resignation, not the date that it was submitted that triggers the right to the name-clearing hearing. I think so, Your Honor. Because during that period, I think he could have rescinded his resignation, as he did, in fact. And so the resignation wasn't final until February 5th if he hadn't done anything. Beyond that, I'd like to talk a little bit about Cox has this language in there talking about expungement, where they're distinguishing a previous case from this Court, Lamas or Yamas. And the whole thing, as I read Cox, is that absent expungement, placement of stigmatizing information in an employee's personnel file constitutes publication when the governing state law classified that file as a public record. And so they're contemplating this idea that if the record is expunged before it's disseminated, there is no publication. And they talked about Lamas as a case where expungement made the difference between publication and non-publication, which I understand to say that if something is put in a file and it's not disseminated, and then it's expunged before it's disseminated, then it's never subject to public disclosure, and there's no publication. And to me, when an exemption applies, that's functionally the same thing as expungement. And so if you buy Mr. Boggs' argument that on January 5th all the requirements of the stigma plus claim were satisfied, on February 5th it became unclear whether it was sort of retroactively depublished, which I think is what Cox contemplates. I think Cox sort of creates this sort of unworkable framework where there's a lot of sort of retroactivity, and it makes it very hard for a public official to know when a name-clearing hearing is required. If I could add just one final point, which is simply that from a pragmatic standpoint, I think the stigma plus claim we're talking about here was recognized in Roth as having a liberty interest in taking advantage of other employment opportunities here. Mr. Boggs was able to obtain follow-on employment as early as February 2007, and as early as August 2007, six months later, he was making more than he had ever made at the DA's office. And so to the extent we're going to really broaden this publication idea, I think it might make sense to require some sort of real stigmatizing information that has an effect on this interest. Is there anything in the case law that suggests that the actual impact of stigmatizing information should be considered when we make a determination? I think Roth recognizes that that aspect of Roth has not been very well developed. Yeah, but what you seem to be saying is if you ever tried this, you might win. But that's a different issue, not disqualified immunity here. That's a different issue, Your Honor. I think I'm going to see the rest of the time. Thank you. Good morning, Your Honors. Jenny Madcorp from Multnomah County. I'm going to focus my arguments today on the municipal liability question and the state law question, unless this Court has other areas they'd like me to focus on. To respond to Mr. Bruchetto's arguments regarding the policymaker and saying that Mr. Shrunk is a policymaker, there's a very key distinction that Mr. Bruchetto left out. It's not policymaker, it's final policymaker, okay? The evidence has to show that Mr. Shrunk was the final policymaker for employment policy at Multnomah County, and the record clearly states that he is not. Our county charter, which is essentially our constitution, states that the county chair, who is an elected official, is the chief employment officer for the county. And when we also look at our personnel rules, it's the county chair, not Mr. Shrunk or Mr. Hoover or anybody at the DA's office who creates employment policy at the county. If we look at, we can look at the supplemental excerpt of records. Where would you cite in the record or in your law for that proposition? So we have, let's see, for the charter, we have the supplemental excerpt of record 35, and then the county chair adopting the personnel rules as of S.E.R. 36 through 38. Now we do have one area where that's at E.R. 272, and it says that the district attorney can adopt administrative rules, but it also specifically says that he cannot adopt administrative rules which are contrary to the personnel rules of Multnomah County or otherwise to the law. So at Multnomah County, it's clear the final policymaker is the Multnomah County chair, and we can look to the Supreme Court, the Penn-Bauer case, and in that case it says that the ability to hire or fire, in that case it was a sheriff, the ability to hire or fire does not mean that you're the final policymaker for employment policy. And in this case, the policies that we're talking about are the policies of whether or not to provide a due process name-clearing hearing for a person who has separated or been terminated from employment, and those policies are most certainly employment policies. This issue wasn't raised in the case, but it sort of fascinates me. Is there a sort of due process problem with having a medical examiner being subject to the district attorney in terms of his employment? So if the forensic report comes back a way that the district attorney doesn't like, the district attorney can fire the medical examiner? Is that the way it works in this county? When we look at Oregon state law, what we see is that the district medical examiner positions have basically dual supervisory. So they're both the district medical examiner and the DA. And when we look at the legislative history, it gives us a very clear indication, as the district court looked at below, that that tension is dealt with in the Oregon state law. And so we have that dual supervisory role so that, you know, if there's not a bias, perhaps, or undue influence, but that the county actors can actually still have some move-in forth with regard to. So what is the county policy with respect to the publication of information in the file? Now we're, what, four years into this case or five years into this case? What is the county policy? So the county policies with regard to disclosure of public records is essentially to follow the law. Well, of course. Tell us what the law is. Exactly. And that's, but what we see, we can look at Excerpt of Record 120, and that's where our rules direct compliance with Oregon state law. We have the Excerpt of Record at 17, where the Multnomah County Personnel Rules, again, direct county employees not to violate state, federal, or local law. And then that's it. That's really just a tautology. Judge Hurwitz is trying to understand, as am I, what is the law in this case? What do you do? Let's assume this case happened again tomorrow. Okay. With the same facts. Tell us what you think the county's obligations are. So what our obligations are are to look at the particular facts at issue at the time. Same facts as this one. Okay. So in the same facts as this one, we would not disclose any personnel disciplinary records until there had been the effective date of the resignation. Because up until that time, it's unclear and it's an ongoing issue. So with the dates that we were given previously, that's the January to February 2007 dates. So if a records request was made during that time, we would not, as we did not, provide any personnel disciplinary or investigative records. Okay. And on the effective date, or on or before the effective date, the employee withdraws the resignation. What's the county's policy then? So then, as is now, we would not disclose the record because the personnel action was basically clouded. We don't know. We might have to terminate. We might have to terminate. And under the public records law, if the personnel action hasn't been resolved, we have a reasonable time to respond to requests. And that reasonable time period has a really important component, and that's at ORS 192.430. That has an important component because if on Monday we're required to disclose and then on Tuesday the conditional exemption applies because, let's say, we had to terminate the person, then the conditional exemption has no bearing whatsoever. So we need that time to review the actual facts and make determinations as to whether or not an exemption applies. In this case, we had District Attorney Hoover, who's the one who released the records, who says that, in his mind, the personnel action was not resolved until the lawsuit was filed. Because you didn't know until then whether or not he was contesting the? Oh, well, we knew he was contesting it. We had letters from his counsel. Well, that's why I'm trying to figure out why the lawsuit being filed is a relevant date. Well, because up until, let's see, I have a February? And I know this Court said that, but I'm still trying to figure it out. Yeah, so late in February 2007, we have a letter from counsel saying, my client is still employed, cut him a paycheck, he needs to come back to work. So, and we're saying, we thought, well, no, I mean, this matter isn't over. And so we have these negotiations going back and forth. So the filing of the lawsuit, by definition, makes it public, right? Yes. It's a self-publication anyway. It was. It was, Your Honor. And so? So just help me out again. In the absence of the filing of the lawsuit, how does this play out? Well, I mean, in the absence of filing a lawsuit, we would have continued the negotiations as they had been going on, letters back and forth, calls back and forth, you know, talking about the issues. And at some point, then, you would have had finality in your view. At some point. I mean, if we look at the pleadings in this case, you know, technically, according to the plaintiff, this employment action still isn't resolved, right? Because he says he still should be employed by Multnomah County because Defendant Shrunk didn't have the ability to terminate him. And that quickly leads me to the state law claims. And, Your Honors, I think I did. I hate to trouble you, but you're past your time. Oh, I'm past my time. That's the red dot. Yeah, that's when the trap door opens up. All right. Thank you very much. Thank you very much. Counsel, you have a little bit of time left. Two or three points. Number one, the arguments about the resignation not being effective until the ‑‑ not being final until the effective date, not raised in the lower court, not raised in Boggs or in the prior case, not raised in the pleadings in this case or the briefs. More importantly, had it been raised, it is hornbook law that a resignation is effective when it is accepted. Yeah, but for purposes of this liberty interest we're talking about and stigma plus, when you make everything public by filing a lawsuit, doesn't that change the game? Not with respect to any of our arguments. With respect ‑‑ and that issue was briefed and decided adversely to the defendants in the lower court. It has not been raised, again, on appeal. Because our publication occurred when the resignation was accepted and Shrunk accepted the resignation on January 5th. Can you address your state law claims for us briefly? Yes. I take it your claim boils down to I was fired by the wrong guy? I didn't hear that. Does your claim boil down to I was fired by the wrong guy? Either fired by the wrong guy or it should have been a cooperative process. Okay. He can't act alone. Given that the county and Mr. Shrunk are here together holding hands, what's the harm from that? Would there have been a different result? You know, the county and Mr. Shrunk aren't here holding hands because the medical examiner. But as I read the medical examiner's affidavit in this case, the medical examiner says, look, I wouldn't have done it, but if the DA wanted to, then I exceed. Isn't that fair? I don't think that that's what she said. I think she said I disagreed with the whole thing. I never agreed to it. But he effectively made the decision without my agreement. Okay. If I can just have 30 seconds. I think we'll give you a little bit. 30 seconds, that's it. Okay. All right. I'm counting right now. On the policymaker issue, the municipal liability issue, the defense argues that Mr. Shrunk has to be a final policymaker. They really don't address the Ulrich issues or the McKinley v. City of Eloy issues because, in fact, there is no county policy regarding due process, thus nothing constraining his authority to deny a due process hearing. Thank you. Thank you all of counsel for your good arguments. Appreciate it. The case is argued as submitted.
judges: Alarcon, Smith, Hurwitz